# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENTON O. DAVIS, II,<br><br>          Petitioner,<br><br>     v.<br><br>W.L. MONTGOMERY,<br><br>          Respondent. | Case No.  1:14-cv-01650-LJO-SAB-HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent is the Warden of Calipatria State Prison in Calipatria, California.

## I.

## BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to the 2012 judgment for kidnapping, robbery, assault, gang enhancement, and great bodily injury enhancement in the Kings County Superior Court.  He was sentenced to serve an eighteen-year prison term.

Petitioner timely filed a notice of appeal.  On January 17, 2014, the California Court of Appeal, Fifth Appellate District, affirmed the convictions and true findings.  See People v.

Maxwell, 2014 WL 198420 (Cal.App.5th January 17, 2014).   The Fifth Appellate District remanded for resentencing for the trial court to either impose or strike the gang enhancement appended to the subordinate counts.   Maxwell, 2014 WL 198420 at *20.   On April 30, 2014, the California Supreme Court denied the petition for review.   (ECF No. 1 at 2).[1]   Petitioner did not file any habeas petitions in state court.

Petitioner alleges that (1) There was insufficient evidence as to the kidnapping conviction; (2) The trial court failed to *sua sponte* instruct the jury on the lesser included offenses of false imprisonment and grand theft from a person; and (3) There was insufficient evidence as to the great bodily injury enhancements appended to the robbery and kidnapping convictions.   (ECF No. 1 at 4-7).

## II.

## STATEMENT OF FACTS[2]

On January 17, 2011, Steven Galante was living in Visalia and working at the Best Buy Market in Hanford. Galante and a coworker, Christina Gallagher made plans to get together after work. Christina and a friend, Rosie, picked up Galante when he got off work; Christina brought with her a large quantity of beer. The three drove to Rosie's house in Hanford. After they arrived, there were a total of three women and eight men at the house, including Davis, Maxwell, and Gallagher.

During the course of the evening, Galante spoke with everyone at the house. People were hanging out and drinking. Galante had two or three beers and a shot of whisky during the evening.
About 90 minutes after arriving at the party, Galante, Christina, Maxwell, and another girl, Jewels, drove to a nearby store. As they were leaving the store, Serna was standing outside. Christina introduced Serna and Galante; Serna got into the car with the group.

After returning to the party, while in a conversation with Maxwell, Galante informed Maxwell that he had been to prison for possession for sale of drugs and that he was a Northerner or Norteno. Galante had dropped out of the gang while in prison but did not admit this to Maxwell. Maxwell told Galante he was a Crip. Galante was not concerned because Northerners and Crips

---

[1] Page numbers refer to the ECF page numbers at the top right of the page.
[2] The Fifth District Court of Appeal's summary of the facts in the January 17, 2014 opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).   Petitioner does not present clear and convincing evidence to the contrary; thus, the Court adopts the factual recitations set forth by the state appellate court. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009) ("We rely on the state appellate court's decision for our summary of the facts of the crime.").

usually got along in prison.

Sometime later, Christina again was leaving the party with Rosie and Jewels to go to the store; she wanted Galante to go with them. Galante indicated he would stay behind; Christina was concerned for his safety because Serna was at the house. Christina did not trust Serna based on previous contact with him.

Shortly after leaving the house, Christina called Galante on his cell phone and stated Rosie had been arrested for driving under the influence of alcohol and she (Christina) needed a ride. Galante told Gallagher Christina needed a ride. Gallagher had been in a room with Maxwell, Davis, Serna, and an individual by the name of Chase discussing rescheduling a Crips meeting.

Galante thought he and Gallagher were going to pick up Christina, but when they walked out of the house, Serna, Maxwell, Davis, and Chase came along. Maxwell asked where Galante was from; Galante responded "Tulare County." Someone hit Galante on the back of the head and he fell to the ground. Maxwell, Serna, Davis, Gallagher, and Chase then repeatedly kicked and hit Galante while yelling "Home Garden Crip." Galante also heard someone say, "this is a Crip thing."

The five men beating Galante threatened to kill him if he made any noise. They took Christina's car keys from Galante, walked him to the car, and pushed him into the trunk. At some point during the attack, Galante's cell phone and wallet were taken. They then closed the trunk and drove away with Galante in the trunk; Galante lost consciousness at some point.

After a while the car stopped. The trunk was opened and Galante was warned to be quiet or he would be killed. Two of the men pulled Galante out of the trunk; Galante fell to the ground. They again beat Galante, hitting him "a dozen, two dozen times." Galante saw each of the appellants hitting him when he looked up a couple of times during the assault. Gallagher was right in front of Galante. They leaned over Galante as they hit and kicked him. After the assault, Galante eventually was able to stumble to a house and ask for help.

Kings County Sheriff's Deputy Nathan Ferrier interviewed Galante at the hospital emergency room. Galante indicated all five of the males at the house attacked him after Christina left. The interview was short because Galante passed out. Galante had a gash under his eye that required multiple stitches. He had multiple abrasions and bruising to his back and shoulders.

Detective David Dodd drove to the location where Galante had been left by the roadside. Dodd saw two puddles of blood on the road that were consistent with Galante being beaten at that location. A short distance from the puddles of blood were the words "gangsta Crip." A house nearby had gang writing on it.
Dodd again interviewed Galante the next day after his release from the hospital. Galante had interacted mostly with Maxwell at the

party and easily was able to identify Maxwell as one of his attackers. Galante also identified Gallagher, Davis, Serna, and Chase from photo lineups.

On October 4, 2011, an information was filed charging Davis, Serna, Maxwell, and Gallagher with kidnapping, second degree robbery, and assault by means likely to produce great bodily injury. As to all three counts, it was alleged all four personally inflicted great bodily injury and committed the offenses for the benefit of a criminal street gang. It also was alleged Maxwell had suffered a prior serious felony conviction and Serna had served a prior prison term.

The parties stipulated that Kings County Sheriff's Deputy Andrew Meyer was an expert in Kings County street gangs. Meyer explained that the Northerners, or Nortenos, and the Crips were rival gangs in Kings County. Crips would try to assault a Norteno who came into their territory and it would be common for the gang members to call out the name of the gang during an assault. Meyer opined that Davis, Serna, Maxwell, and Gallagher were members of the Crips gang.

The jury found all four appellants guilty as charged and found all enhancements true. The trial court imposed an aggregate term of imprisonment of 18 years for Davis and remanded him to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF). An aggregate term of 33 years was imposed on Maxwell, 23 years on Serna, and 23 years on Gallagher, each of whom was sentenced to state prison.

Maxwell, 2014 WL 198420 at *1-2.

## III.

## DISCUSSION

### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.   28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000).   Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.   The challenged conviction arises out of Fresno County Superior Court, which is located within the jurisdiction of this Court.   28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

**B.     Standard of Review**

Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 131 S.Ct 770, 784, 178 L.Ed.2d 624 (2011); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 592 U.S. at 412.  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Id.  In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA.  Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006).  If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision.  Carey, 549 U.S. 70; Wright, 552 U.S.

at 126; <u>Moses</u>, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of," [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412-13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." <u>Id</u>. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 75-76. The writ may issue only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Harrington</u>, 131 S.Ct. at 784. In other words, so long as fairminded jurists could disagree on the correctness of the state courts decision, the decision cannot be considered unreasonable. <u>Id</u>. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the

error had a substantial and injurious effect on the verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See LaJoie v. Thompson, 217 F.3d 663, 669 (9th Cir. 2000); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

The AEDPA requires considerable deference to the state courts.  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits," and "evidence introduced in federal court has no bearing on 2254(d)(1) review." Cullen v. Pinholster, 131 S.Ct. 1388, 1398-99 (2011).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary."  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1)).  However, a state court factual finding is not entitled to deference if the relevant state court record is unavailable for the federal court to review.  Townsend v. Sain, 372 U.S. 293, 319 (1963), overruled by, Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992).

## C.  Review of Claims

### 1.  Sufficiency of the evidence for the kidnapping conviction

In his first claim for relief, Petitioner alleges that there was insufficient evidence to support his kidnapping conviction.  (ECF No. 1 at 5; ECF No. 20 at 6-12).  Petitioner argues that there was no proof of substantial movement of the victim.  (ECF No. 1 at 5).

This claim was presented on direct appeal to the Fifth District Court of Appeal and it was denied in a reasoned decision.  Petitioner then presented this claim in a petition for review to the California Supreme Court.  The California Supreme Court summarily denied the petition. Federal courts review the last reasoned state court opinion.  Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  Therefore, the Court must review the opinion of the Fifth District Court of Appeal. In rejecting Petitioner's claim, the appellate court stated as follows:

The elements of kidnapping are "(1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance. [Citation.]" (*People v. Jones* (2003) 108 Cal.App.4th 455, 462, fn. omitted.) Davis challenges only the evidence supporting the last element, movement for a substantial distance.

Galante testified he was pushed into the trunk of Christina's car and driven to an unknown location, where he was hauled out of the trunk, beaten again, and left on the ground. Although Davis claims there was no proof of the exact distance Galante was moved, Galante's testimony was sufficient evidence of substantial movement.

"[F]or simple kidnapping asportation the movement must be 'substantial in character' [citation], but ... the trier of fact may consider more than actual distance." (*People v. Martinez* (1999) 20 Cal.4th 225, 235 (*Martinez* ).) " '[S]ection 207 does not speak in terms of a movement of any specific or exact distance.' [Citation.] Accordingly, nothing in the language of section 207(a) limits the asportation element solely to actual distance. Section 207(a) proscribes kidnapping or forcible movement, not forcible movement for a specified number of feet or yards." (*Id.* at p. 236.)

Here, the undisputed evidence establishes that Galante was transported at night, for an unknown distance, and then left lying in the roadway in an area he did not recognize after being beaten severely. Galante did not need to testify to an exact distance, nor did an exact distance need to be established. (*Martinez, supra,* 20 Cal.4th at p. 236.) Galante's movement was substantial in nature, regardless of the exact distance; he was transported from the residence where the initial beating took place to another location he did not recognize. The element of asportation was satisfied. (*People v. Burney* (2009) 47 Cal.4th 203, 251.)

Maxwell, 2014 WL 198420 at *4-*5.

The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim, a court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324 n.16. On federal habeas review, AEDPA requires an additional layer of deference to the state decision. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Therefore, the Court will evaluate whether the California Court of Appeal's finding that there was sufficient evidence to support Petitioner's kidnapping conviction was contrary to and involved an unreasonable

1   application of federal law as established by the Supreme Court's decision in <u>Jackson</u>.

2          The California Court of Appeal applied the <u>Jackson</u> standard, stating that "[T]he critical

3   inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not

4   simply to determine whether the jury was properly instructed, but to determine whether the

5   record evidence could reasonably support a finding of guilt beyond a reasonable doubt."

6   <u>Maxwell</u>, 2014 WL 198420 at *4.  The California Court of Appeal then analyzed the facts of the

7   case, applied relevant California authority, and concluded that there was sufficient evidence

8   supporting the kidnapping conviction.

9          Petitioner was convicted of kidnapping, in violation of Cal.Penal Code § 207(a), which

10  provides as follows:

11                  Every person who forcibly, or by any other means of instilling
                    fear, steals or takes, or holds, detains, or arrests any person in this
12                  state, and carries the person into another country, state, or county,
                    or into another part of the same county, is guilty of kidnapping.
13

14  As explained by the California Court of Appeal, in order to prove a violation of this statute, the

15  prosecution must establish that: "(1) a person was unlawfully moved by the use of physical force

16  or fear; (2) the movement was without the person's consent; and (3) the movement of the person

17  was for a substantial distance."  <u>Maxwell</u>, 2014 WL 198420 at *5.

18         Petitioner argues that there was insufficient proof that the victim was moved for a

19  substantial distance because no evidence was presented of the actual distance that the victim was

20  moved.  However, kidnapping requires that the movement was substantial in character, but is not

21  limited to a specific or exact distance.  <u>People v. Martinez</u>, 20 Cal.4th 225, 235-237 (1999).  If

22  the movement is more than slight or trivial it is sufficient to satisfy the asportation element.  <u>See</u>

23  <u>Martinez</u>, 20 Cal.4th at 237; <u>People v. Shadden</u>, 93 Cal.App.4th 164, 169-70 (2001) (movement

24  of victim nine feet from an open area to a closed room sufficient to support asportation element);

25  <u>People v. Smith</u>, 33 Cal.App.4th 1586, 1593-1594 (sufficient asportation where defendant moved

26  the victim from the driveway into a camper at the rear of the house).  In addition to distance,

27  factors used to determine whether the victim was moved a substantial distance include whether

28  the movement increased the risk of harm, decreased the likelihood of detection, and increased

both the danger inherent in a victim's foreseeable attempts to escape and the attacker's enhanced opportunity to commit additional crimes.  Martinez, 20 Cal.4th at 237.

In this case, evidence was presented that the victim was shoved into the trunk of the car and driven to an unknown location.  Although the victim did not testify to an exact distance that he was moved, there was evidence that he was transported from where the first beating took place to a location that he did not recognize.  Therefore, there is evidence in the record which reasonably supports that the movement of the victim was sufficient to satisfy the asportation element of the kidnapping statute beyond a reasonable doubt.   Accordingly, the Court of Appeal's decision was not an unreasonable application of Jackson. Thus, Petitioner is not entitled to habeas relief on this claim.

2.    Trial court's failure to *sua sponte* instruct the jury on lesser included offenses

Petitioner argues that his due process rights were violated because the trial court failed to *sua sponte* instruct the jury on false imprisonment as a lesser included offense of kidnapping and grand theft from a person as a lesser included offense of robbery.  The last reasoned rejection of Petitioner's claims concerning the lesser included offenses of false imprisonment and grand theft from a person is the decision of the California Court of Appeal for the Fifth Appellate District:

**Standard of review**

"A criminal defendant is entitled to an instruction on a lesser included offense only if [citation] 'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser.* [Citations.]" (*People v. Memro* (1995) 11 Cal.4th 786, 871.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could ... conclude[ ]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) If substantial evidence exists, the trial court has a sua sponte duty to give the instruction, even if the evidence supporting the lesser offense is inconsistent with the accused's defense. (*People v. Sinclair* (1998) 64 Cal.App.4th 1012, 1016–1017.)

An appellate court independently reviews a trial court's failure to instruct on a lesser included offense. (*People v. Waidla* (2000) 22

Cal.4th 690, 733 (*Waidla* ).)

**Analysis**

False imprisonment is a necessarily included lesser offense of kidnapping. (*People v. Magana* (1991) 230 Cal.App.3d 1117, 1121.) The difference between the two is that false imprisonment can occur without any movement or asportation of the victim; kidnapping requires a degree of asportation. (*People v. Reed* (2000) 78 Cal.App.4th 274, 284.)

Here, there is undisputed evidence that supported the element of asportation and a completed kidnapping; there was no evidence presented that Galante was not moved from the property where the initial beating took place to another location. Substantial evidence thus did not support a conclusion that the lesser offense of false imprisonment, but not kidnapping, was committed. The trial court therefore had no duty to instruct on the lesser included offense of false imprisonment.

. . .

Appellants contend the trial court erred and violated their due process rights by failing to instruct *sua sponte* on the lesser included offense of grand theft person, consequently his robbery conviction must be reversed. Specifically, they maintain it was a close question as to whether the intent to steal was formed before or during the use of force, as opposed to after the use of force. If formed after use of force, they contend the offense is grand theft person, not robbery, and the trial court erred in failing to so instruct. We conclude the trial court did not err prejudicially in failing to instruct *sua sponte* on the lesser included offense of grand theft person.

As stated *ante,* the trial court has a *sua sponte* obligation to instruct on a lesser included offense when there is substantial evidence from which a reasonable jury could conclude the defendant committed the lesser, but not the greater, offense. (*Breverman, supra,* 19 Cal.4th at p. 162.) We apply de novo review to a claim that the trial court failed to give a required instruction on a lesser included offense. (*Waidla, supra,* 22 Cal.4th at p. 733.) Failure to give a required instruction warrants reversal only if there is a reasonable probability the defendant would have obtained a more favorable outcome if it had been given. (*Breverman,* at p. 178.)

Robbery is the felonious taking of personal property from another, against his or her will, accompanied by means of force or fear. (§ 211; *People v. Marquez* (2000) 78 Cal.App.4th 1302, 1308.) The force or fear required need not be a physical assault, but must be more than an incidental touching. (*People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246.) When the element of force or fear is absent, the taking from a person is grand theft, which is a lesser included offense of robbery. (*People v. Jones* (1992) 2 Cal.App.4th 867, 869.)

Here, the evidence established that the four appellants were having a group discussion in the time leading up to the initial assault. When Galante walked outside the house, appellants followed and commenced a group assault on Galante. Galante was hit in the back of the head and knocked to the ground while appellants yelled out "Home Garden Crip." Galante saw each appellant participate in beating him while he was at the house; appellants beat Galante again after he was forced into the trunk of a car and driven to an unknown location. Galante had been carrying a cell phone and wallet in his pants pocket. After the brutal assaults, his cell phone and wallet were missing.

Substantial evidence supports the strong inference that appellants took Galante's cell phone and wallet during either one of the brutal attacks or when Galante was unconscious as a result of the beatings. Also, contrary to appellants' claims, there is no requirement that the victim be aware his property is being taken from his presence. (*People v. Jackson* (2005) 128 Cal.App.4th 1326, 1330–1331.) A victim of robbery may be unconscious, or dead, when the property is taken, so long as the defendant used force against the victim to take the property. (*Ibid.*)

Appellants also claim there was no evidence the intent to steal Galante's personal property was formed before or during the use of force or fear against Galante, as required for robbery (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 166 (*Letner and Tobin* )), and thus a lesser included instruction should have been given sua sponte. We conclude any error is harmless.

The jury was instructed that the prosecution had to prove appellants did the acts charged, and that they acted with a particular intent and mental state. The jury also was instructed that "[t]he defendant's intent to take the property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after using the force or fear, then he did not commit robbery." Absent some affirmative indication in the record to the contrary, and here there is none, we presume the jury followed the instructions given. (*People v. Holt* (1997) 15 Cal.4th 619, 662 (*Holt* ).)

In *People v. Sedeno* (1974) 10 Cal.3d 703 (*Sedeno*), disapproved on other grounds in *Breverman, supra,* 19 Cal.4th at page 165, the California Supreme Court held that the failure of the trial court to instruct the jury *sua sponte* on a lesser included offense was harmless beyond a reasonable doubt under circumstances in which "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. In such cases the issue should not be deemed to have been removed from the jury's consideration since it has been resolved in another context, and there can be no prejudice to the defendant since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*Sedeno,* at p. 721.)

This is precisely what happened here. The jurors resolved the issue

1  of the timing of formation of intent adversely to appellants under
2  other, properly given instructions. Consequently, any error in
   failing to instruct on the lesser included offense of grand theft
3  person is necessarily harmless. (*Sedeno, supra,* 10 Cal.3d at p.
   721.)

4  Maxwell, 2014 WL 198420 at *5-*6,*8-*9.

5       Petitioner argues that the jury should have been instructed on the lesser included offense

6  of false imprisonment because the evidence of movement for a substantial distance was weak.

7  (ECF No. 20 at 13).  Petitioner also argues that the jury should have been instructed on grant

8  theft from person as a lesser included offense of robbery because the evidence suggested that

9  there was a gang assault on the victim followed by the removal of the victim from the gang's

10  territory, and then the after formed intent to steal and the taking from the victim.  (ECF No. 1 at

11  6).

12       In Beck v. Alabama, the United States Supreme Court held that a trial court's failure to

13  instruct the jury on a lesser included offense in a capital case would be a constitutional error if

14  there as evidence to support the instruction.  447 U.S. 625, 638, 100 S.Ct. 2382, 65 L.Ed.2d 392

15  (1980).  However, the Supreme Court did not decide whether a court in a non-capital case was

16  required to give a lesser included offense instruction.  See id. at 638 n. 14.  The Ninth Circuit has

17  declined to extend the holding in Beck to noncapital cases.  See Solis v. Garcia, 219 F.3d 922,

18  929 (9th Cir. 2000) (per curiam).  Petitioner's claim is barred by the United States Supreme

19  Court decision in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989),

20  because there is no clear rule of constitutional law as to whether a trial court must instruct on a

21  lesser included offense in a noncapital case.

22       However, a criminal defendant is entitled to have the trial court instruct the jury on his

23  theory of defense, provided the theory is supported by law and has some foundation in the

24  evidence.  Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct.883, 99 L.Ed.2d 54 (1988);

25  Bradley v. Duncan, 315 F.3d 1092, 1098 (9th Cir. 2002), cert. denied, 540 U.S. 963, 124 S.Ct.

26  412, 157 L.Ed.2d 305 (2003).  Thus, to the extent Petitioner argues that the trial court denied him

27  due process of law by failing to instruct the jury on his theory of defense, his claim is not barred

28  by Teague since the Supreme Court has recognized that defendants must be provided a

1  meaningful opportunity to present a complete defense. See Bradley, 315 F.3d at 1098–1101. An

2  instruction is not warranted when there is only a 'mere scintilla' of evidence supporting the

3  theory of defense. United States v. Thomas, 612 F.3d 1107, 1121 (9th Cir. 2010), cert. denied,

4  131 S.Ct. 1836 (2011). However, "a defendant is entitled to an instruction as to any recognized

5  defense for which there exists evidence sufficient for a reasonable jury to find in his favor."

6  Mathews, 485 U.S. at 63; Bradley, 315 F.3d at 1098. In this context, substantial evidence is

7  "evidence from which a jury composed of reasonable [persons] could … conclude[  ] that the

8  lesser offense, but not the greater, was committed." People v. Breverman, 19 Cal.4th 142, 162

9  (1998).

10      Here, to the extent Petitioner argues that the trial court failed to instruct the jury on his

11  theory of defense by not instructing the jury that false imprisonment is a lesser included offense

12  of kidnapping and that grand theft from a person is a lesser included offense of robbery, his

13  claims are unavailing. Petitioner cannot show that any instructional error had a substantial

14  influence on the conviction and thereby resulted in actual prejudice. See Brecht v. Abrahamson,

15  507 U.S. 619, 637-638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

16      There was sufficient evidence supporting the kidnapping conviction and it is not

17  reasonably probable that the result would have been different if the jury had received the

18  instruction on the lesser included offense of false imprisonment. There was evidence that the

19  victim was placed in the trunk and driven to a second location. Although there was no evidence

20  about the actual distance that the victim was moved, there was evidence that the victim was

21  moved from the residence where the first beating occurred to a second location that was

22  unknown to the victim. Therefore, there was substantial evidence of asportation, which is the

23  difference between false imprisonment and kidnapping. See People v. Reed, 78 Cal.App.4th

24  274, 284 (2000). There was no substantial evidence that no asportation had occurred, and

25  therefore, there was no substantial evidence for the lesser offense of false imprisonment. Thus,

26  this Court does not find the Court of Appeal's determination that the trial court had no duty to

27  instruct on the lesser included offense of false imprisonment was an unreasonable application of

28  federal law.

As for the lesser included offense of grand theft from a person, there was insufficient evidence to support a theory that Petitioner committed grand theft from a person.  Robbery is the felonious taking of personal property from another, against his or her will, accompanied by means of force or fear.  Cal.Penal Code § 211.  Grand theft from a person is robbery without the element of force or fear.  People v. Jones, 2 Cal.App.4th 867, 869 (1992).  The taking element is established when a defendant takes property in the victim's "immediate presence."  People v. Brito, 232 Cal.App.3d 316, 325 (1991).  There was evidence that the application of force was indivisible from the taking of the victim's wallet and cell phone.  Evidence supported the inference that the victim's cell phone and wallet were taken during one of the attacks or when he was unconscious as a result of the attacks.  Even if the victim was unconscious at the time that his wallet and cell phone were taken from him, Petitioner and his codefendants could still be guilty of robbery.  See People v. Jackson, 128 Cal.App.4th 1326, 1330-1331 (2005) (holding that a victim does not have to be aware that property is being taken from his presence).  There was no evidence presented at trial to show that Petitioner and his codefendants took the money from the victim without use of force or fear.

Petitioner argues that there was no evidence that he and his codefendants formed the intent to take the victim's personal property before or during the use of force or fear against the victim.  However, any error in not giving the instruction for grand theft from a person did not have a substantial effect on the conviction and was not prejudicial.  The jury was instructed as to the elements of robbery, one of which is that "[t]he defendant's intent to take the property must have been formed before or during the time he used force or fear."  By finding Petitioner guilty of robbery, the jury determined that Petitioner formed the intent to take the victims cell phone and wallet before or during the time he used force or fear.  Therefore, any error in not giving the instruction for grand theft from a person was harmless.

Thus, the state court's rejection of Petitioner's claims about the lesser included offenses of false imprisonment and grand theft from a person was neither contrary to, nor an objectively unreasonable application of, any clearly established federal law.  Accordingly, Petitioner's claim must be denied.

3.     <u>Insufficient evidence for great bodily injury enhancement</u>

Petitioner argues that there is insufficient evidence for the great bodily injury enhancement for the kidnapping and robbery convictions because the injuries to the victim occurred before the victim was transported and the injuries were not inflicted after the intent to rob the victim was formed.  The Fifth Appellate District Court rejected this claim:

> Davis, Maxwell, and Serna maintain the great bodily injury enhancements appended to the robbery and kidnapping convictions must be reversed on the basis of insufficiency of the evidence. Specifically, they assert the injuries that constitute great bodily injury occurred before Galante was transported, which is the basis of the kidnapping charge, and there is no proof the injuries were inflicted after the intent to rob Galante was formed. We disagree with this contention.
>
> **Analysis**
>
> Section 12022.7 imposes additional punishment on anyone who personally inflicts great bodily injury on a person in the commission of a felony. For purposes of imposition of the great bodily injury enhancement, " 'offenses committed during escape from the scene of the crime must be deemed acts in the commission of the crime.' " (*People v. Mixon* (1990) 225 Cal.App.3d 1471, 1488 (*Mixon* ).) Consequently, in determining if great bodily injury was inflicted on Galante in the commission of a crime, we look to the continuous course of events. The "commission" of the felony does not end until the perpetrators have relinquished control of the victim and have fled. (*Ibid.*)
>
> Here, Galante received a brutal beating in which each appellant, Davis, Maxwell, Serna, and Gallagher, kicked and hit him in the head while yelling "Home Garden Crip." Galante was beaten so badly that he lost consciousness when placed in the trunk of the car. The beating continued after Galante was transported in the trunk of the car and left on the roadside. At some point in this journey Galante was robbed. The beatings, kidnapping, and robbery all occurred before Davis, Maxwell, Serna, and Gallagher relinquished control over Galante.
>
> The four appellants worked together in assaulting Galante before kidnapping him; the four were together in the car while transporting Galante in the trunk—the kidnapping; and the four participated in beating and kicking Galante after pulling him from the car and dropping him on the roadside. The jury reasonably could have inferred that Davis was acting in concert with the other three perpetrators throughout the kidnapping and robbery because he was present throughout; he participated in the series of beatings in both locations; and he was in the car while Galante was transported in the trunk and therefore was present when Galante was robbed at some point in this sequence of events. (*People v. Hill* (1998) 17 Cal.4th 800, 851–852.)

16

> Circumstantial evidence establishes that all four appellants acted jointly to rob and kidnap Galante, and the beating inflicted on Galante by all four appellants on the roadside was part of this continuous course of conduct. The roadside beating consisted of Galante being hit "a dozen, two dozen times." The injuries inflicted upon Galante on the roadside constituted more than transitory or short-lived bodily distress. (*Mixon, supra,* 225 Cal.App.3d at p. 1489.) There was blood on the road and two separate puddles of blood at the residence where Galante sought help after the beating. He had multiple abrasions and bruising. This evidence establishes that the injuries were more than transitory, short-lived bodily distress. (*Ibid.*)
>
> The claim the evidence was insufficient to sustain the great bodily injury enhancements appended to the robbery and kidnapping counts thus fails.

Maxwell, 2014 WL 198420 at *7-8.

Under Section 12022.7(a) of the California Penal Code, provides that the court must impose a three-year enhancement when a defendant personally inflicts great bodily injury during the commission of a felony. Pursuant to California law, a great bodily injury enhancement applies where the injury is inflicted during the commission of a felony, which extends until the perpetrators relinquish control of the victim. People v. Mixon, 225 Cal.App.3d 1471, 1488 (1990). Here, there were two beatings at separate locations. There was evidence that Petitioner and his codefendants did not relinquish the victim until after they transported him to an unknown location and beat him for a second time. Therefore, Petitioner and his codefendants had control of the victim during the course of the first and second beatings, the time that they moved him in the trunk of the car, and the time that they took his wallet and cellphone from him. The actions by Petitioner and his codefendants were one continuous episode of criminal conduct. Therefore, there was sufficient evidence that Petitioner and his codefendants injured the victim during the course of the assault, kidnapping, and robbery.

There was sufficient evidence that the injuries to the victim were sufficient for "great bodily injury," which is defined as "a significant or substantial physical injury." Cal. Pen.Code § 12022.7(f). Here, the victim was hit about a dozen or two dozen times at the roadside. The victim had multiple abrasions and bruising as a result of the beatings and may have lost consciousness in the trunk of the vehicle when he was moved. There were puddles of blood

from the victim in the residence that he sought help from after the beating.  The victim testified that he saw Petitioner beating him.  Therefore, as a fairminded jurist could have found that the California Court of Appeal's ruling was not inconsistent with Supreme Court precedent, Petitioner is not entitled to habeas relief.

## IV.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 24, 2015**

_____
UNITED STATES MAGISTRATE JUDGE